Good morning, your honors. My name is Michael Farr, appellant. It's an honor to be speaking in front of this court today From the very beginning of this process, I've been honest, transparent, and forthcoming and I will continue to do so here today Would any of you like to reserve five minutes of time for rebuttal? I'll try to watch the clock and help you Thank you, your honor. I understand time here is valuable and as a result I've mapped out in time what I'd like to say here today But I prefer to make the most use of the court's time by giving preference to any questions that you may have So, please feel free to interrupt me at any time Or if I've adequately answered the court's question, and I'm still talking, please feel free to interrupt me I will move on to the next point Your honors, my goal is simple today. I want to be sure that you understand So many of the statements in the district court's final order were created as a result of excluding key information in the record, misstating evidence, overlooking obvious credibility issues on the part of Ms. Kendrick and her witnesses, incorrectly marginalizing or dismissing key witness testimony, and elevating testimony and evidence that was either irrelevant, biased, or even dubious My hope is that you will clearly see the errors made by the district court and that Mexico was indeed our habitual residency  My hope is that you will right the wrong done by the district court and order my children return to Mexico So we can continue the custody process currently underway At this point I'd like to address, ask the court if they have any questions for me Mr. Farr, I just hope you understand that the summary you just gave all amounts to an attack on the factual findings that Judge Lanza made Now you understand that our review is limited. In other words, we don't, you know, find the facts all over again Our review is whether or not the district judge made a clear error and that's a fairly high standard. So I just, I just admonish you that in your argument that you hew to that and you know in effect not try to make this a rerun of what happened in the trial court I understand your honor. Thank you for pointing that out. You know, and that's why I'd like to go through the district court's order Starting on page 7 facts, facts tending to demonstrate the U.S. Wait a minute, starting on what page? Page 7 Okay, go ahead Page 7 point 23 that Judge Lanza made This point is just irrelevant in the hate convention, your honor Nationality is not applicable in determining whether or not a child should be returned to his or her original residence You don't think that you don't think that the nationality of a child is at least a factor in determining? If they've lived in the United States and were not United States citizens Wouldn't that, wouldn't this be a different case? But your honor, but the hate convention has has for the most part stipulated that a Nationality of a child should not be the determining factor. No, I understand. It's not determinative. I agree with your point Your my question is isn't it at least a factor to be considered in determining what residency is? Yes, it could be your honor, yes. Okay In if there's no questions in point 24 of Judge Lanza's order 35 years is more than enough time to establish residency in the country. When we moved to Mexico We had no plans to return. At this point should actually be in section showing that Mexico was the habitual residency Well, just a minute now when you say we had no plans to return It depends on how you read read the record. You could say you had no plans to stay Beyond two years, right? I would say either position Would be supported by evidence in the record. I know we're seeing again You're asking us to make an original finding out of two possibilities and the trial judge chose the other path Your honor, I understand that and I believe based on the fact that I My sister Who I was looking for at the time testified that the employment was indefinite and so the move down to Mexico was Part of a process for us to move into a different life and we sold everything that we own We did not leave one single possession in the United States And and and and that was and because we had plans the truth was we had plans to happen there for an indefinite Amount of time and to hopefully retire in one of the most beautiful places in the world Counselor, let me ask, I'm counsel, Mr. Farr, you're also counsel today Let me ask you this your your wife Testified that she viewed the move as temporary that she always intended to go back to the United States The judge heard her testimony and seems to have credited it As Judge Tashima told you we can only Overturn that sort of finding if there's clear error And normally we need credibility determinations to the judge so Do you agree that your wife said it wasn't the habitual residency I Do agree that she said that your honor, but no one else testified to that to that that time frame of three to five years But she did she did your honor, but it's it's it's my opinion that her testimony was not credible and Judge Lanza viewed her testimony as credible When there was clear error and looking in the record and the facts when I had confronted Miss Kendrick's credibility And I continue with your argument I just that just occurred to me as Would you like me to continue on that in that area? Yeah, because here's here's the problem and I think judge Tashima tried to identify it at the beginning, but normally We say it's up to the trial judge who sat through the hearing and looked at the witnesses and heard their testimony to make credibility determinations Now if he said I find Mr. Farr less credible than Mrs. Farr because or Miss Kendrick because he wears glasses We might say that's that's an irrational finding and we can't we can't uphold that But he seems to say I found her credible because I thought this was her true intention So what I'm looking for some sort of improper reason why you think he found her credible Yeah, absolutely your honor. So I guess where I would take the court back to is Valenzuela versus Michelle and That is said that the findings of fact turn on credibility determinations the findings receive heightened deference in light of the fact finders unique opportunity to observe the demeanor of the witness and It's my opinion your honor when when Miss Kendrick was confronted with a physical exhibit that showed that she had taken a physical exam at the district district attorney's office in Mexico as part of a as part of a Complaint that she had filed against me in regards to family violence She took a physical examination I presented that document to her in court and and and she said that she never took an examination And it was sitting right there in front of her and then and then when we asked about the documentation of whether there were any marks Whether the Attorney General did an investigation on the children. Mrs. Kendrick said They they did do a physical exam of the children, but I don't have that report here with me today and They she also said that they took pictures of the children that would have identified Showed their heads their their their bodies would have identified the children as our own children And she said that she did not have those pictures either You've answered my question, so please continue. Okay. Thank you your honor Your honor so I in a couple of their points in regards to into the residency Just give me one second to find my find my place Yeah in point number three on our Miss Kendrick testified to ask him to return to Texas two months after we had arrived And we had just sold and moved every possession that we owned to Mexico And as I said no testimony or evidence ever corroborated this statement. We had our oldest kids enrolled in school at that time In point number four your honor this is also very troubling or excuse me Point number four on number 24 The district court said we had a permanent residence in Texas when there was no home no property and no jobs to return to And so I think that this statement is just is just erroneous In number 25 of the judge's order here This is factually incorrect based on exhibit number eight which is a letter from the Mexican immigration office Miss Kendrick's visa was valid along with the children's visas as well. We're in a state of process Does the court have any questions about this I Want to understand your position on that the judge said you entered on temporary visas that you don't dispute that do you? No, I do not your honor so it's a second sentence that the they were not renewed that you dispute that Absolutely that there he is statement was that they expired in August of 2017 when I clearly submitted exhibit number eight that showed an official letter from the Mexican immigration Officials that there be that miss Kendrick's visa was valid and they can the children's visa was in a status of renewal Okay, thank you are You wanted to save some time for rebuttal I told you I'd remind you when you got to close to that time You don't need to stop now if you don't want to but uh your choice But is there any any other specific questions the court would like to ask me right now? Count out come I asked me ask my colleagues any other questions. No, I don't Neither do I? All right, let's let's let's save this time for rebuttal. Thank you and listen to mr. Everett's May it please the court Steve Everett's on behalf of Janine Kendrick, who is the defendant in the lower court and the appellee here If it were not already clear before now your honors the US Supreme Court has recently declared in the monastic case That the standard of review in a habitual residence case is clear error Clear air obviously means there's no evidence in the record to support it It also is stated in the quite a court that the habitual residency termination Thus presents a task for fact-finding courts Not appellate courts and should be judged on appeal by a clear air standard deferential to the fact-finding court Mr. Everett, I agree with I agree with your summary of the Of the standard of a power review that The recent Supreme Court case set aside But here's my problem and sees you can answer, you know this about monastic Monastic he was decided after The district judge issued his order in this case, correct? Yes, sir so the district judge's order is tailored to then Binding Ninth Circuit law, right? It is, you know, such as you know, you know the two main questions that that were important then The problem is now we have a different different standard But I'm gonna ask you said the test now is the totality of the circumstances which Judge Lanza never addressed. So the question is What should we do should we send it back so you know, he can look at the evidence in light of monastic or is the record sufficient to you know, decide the merits now Is that my question? I totally understand your question and it's an excellent question You're asking whether in case it should be remanded in order to determine the facts in light of the monastic case now that it's been decided well in order for the district judge to decide You know what the totality of the circumstances show in this case, right? Let me remind the court that in monastic the Supreme Court chose not to remand the case Even though they had set the standard clear and clear air standard in the totality of circumstances were clearly enunciated Rather they noticed that But also But also the Supreme Court said that that neither side requested a remand Now they also said neither side requested a remand but they also said it was unnecessary had they asked for the remand because the district court in that particular case made all the findings with regard to the totality of circumstances and therefore the record was sufficient without the remand and I think that's a question here, isn't it? Given the findings that Judge Lanza made You know For us to say well in effect He did decide That the totality of circumstances favors The ultimate finding That the US is the child's habitual resident Right, isn't that the question? That is the question and you hit the nail on the head and the answer is clear He made all of the findings that are necessary and if I need to belabor the court by going through them again He went through laborious fact-finding exercise both for those that he found in favor and those he found against and then made the decision based on the totality of the Circumstances so in my opinion if you were to remand the only decision he would do would say he's already made the findings and then Confirm the order that he's already entered Okay Understand your position Obviously, we don't think that a remand is necessary just as the Supreme Court did not find one was necessary in the Manassas case I Wanted to make sure that counsel Let me ask you a question if we were to find that the judge did not clearly err on the habitual residents issue It would be unnecessary for us to address the second issue. Am I correct? You are absolutely correct Grave risk is a defense Only if the court finds an individual residence was Mexico if the court finds that the individual residence the United States Grave risk is no longer a factor Did it answer the question Yeah, that does answer my question. Thank you. I Wanted to make sure and point out that the shared settled intent of the parties I'll be it that that was the standard under the Ninth Circuit prior to the Manassas case is not Necessarily the only deciding factor with regard to this case and as judge Tashima has mentioned it is the totality of the circumstances that really applies when you look at and I want to emphasize one other point in this particular case and that has to do with the ages of the children and the years in Which they went because the court was specific in Manassas about identifying the fact that younger children Have to be considered not only with regard to their own ages and what they did Intentions of their parents when it comes to the decision as to where they're living and what is their habitual resident The court made a statement because children especially those too young or otherwise unable to acclimate depend on their parents as caregivers The intentions and circumstances of caregiving parents are relevant considerations And I would remind this court that these children were only six months old when they left the United States Of course Citizens and then they went to Mexico and they only stayed there for less than through just under three years and came back in August of 2018 The move was in August of excuse me. The move was back here in August 25 of 2015 so they were only there for a short amount of time when you consider the fact that they were infants and or Toddlers at the time that they were in Mexico So when we consider the factors for habitual residents, you have to you have to take that into consideration as Well as all of the decisions that the parents were making I want to address one other aspect that mr Farr mentioned when he was making his argument that it had to do with the length of time and what mother's Intention were attentions were with regard to being there When she went it was within two months afterwards. She started questioning Returning to the United States the reason for that questioning occurred because Mr. Farr did not meet the requirements for the financial considerations that led to the decision to move to Mexico and they were already having financial Difficulty that never changed his job eventually was lost within two years and he did not stay with that particular employer So the very reasons for which miss Kendrick felt that there needed to be a temporary move and not a permanent one Fulfilled in the actual facts that occurred prior to the trial of this matter I would also point out to the court when the question was raised with regard to temporary visas The visas were not renewed. They were applied for but not officially renewed and as a result That's why the court made the finding in number 25 of his order that they were not renewed and that is a correct finding there's a Let's assume one of the findings says that The district court said that Mr. Farr Listed his permanent address in Colorado But that police report also said he said his full-time residence was in Mexico. So what? Let's assume the district court made a mistake in Relying on that does it affect the outcome here? No Because that was just one of many factors that the court relied on I would also point out to the court that in that same That was made to the Colorado criminal authorities that mr. Farr was the one that made a statement. This wasn't someone else This was reported by the officer in charge He was the one that said he splits his time as you read it in quotes between Mexico and Colorado He also just before trial we had an employment agreement in this particular case that identified his quote permanent residence as Being in Colorado and the judge had those factors to rely on so it again falls on the issue of how much weight did the? Trial court give with regard to that information and he concluded that he was also showing those factors in Colorado as much as he was In Mexico. In fact, there is not a document in this case your honor that I can recall where the permanent residence of mr Farr was identified in Mexico as opposed to Colorado or other place in the United States Let me talk about grave risk for just a minute I want to make sure and cover that in the time that we have available I Would like the court to keep in mind the fact that When we're talking about grave risk, you have to look at whose eyes you are looking through with regard to the evidence in the case We are an American court This was in federal district court in Arizona And therefore the judge has the right to look at the facts for grave risk and whether or not the children have been harmed Based upon what he saw and I would point out to this court to in in the context of what happens between different Jurisdictions in different countries when you're dealing with a grave risk analysis, you have to talk about what is the fact finder here? This case had to be filed in Arizona because that's where the children were living And that's the reason why judge lands and look at grave risk factors in the manner in which he did Historically you could argue that there are times when corporal punishment may be may be fine in The old days if you go back as far as I do to go back to the 90s in the 1950s in the 1960s you could argue that even a grade school teacher who slapped a ruler over a child's head was okay and broke a yardstick or Gym teachers who were having a plywood board an inch thick had ten holes Punctured in it and would spank the children in gym class when they disobeyed was acceptable Over the years the last 50 to 60 years the United States has changed its opinion with regard to not only how children are treated But how women are treated the hashtag me too movement has been an extreme example of that How police brutality is treated against potential victims? And we also have had that examined in the last two or three months on a very very extreme level in the United States So when judge Lanza decides that a child shouldn't be treated as they are in this particular case With rulers with wood dowels with PVC pipe done on a regular and consistent basis Then this court should affirm that decision because his discretion was clear I'm gonna give the reasons why I told judge Lanza This was not garden variety corporal punishment, which some courts unfortunately in my opinion have accepted in the United States with children How do we review? Assuming we get to that issue What's our standard of review of the judge's finding of physical abuse? I understand we we defer to his finding that specific incidents happened But that doesn't seem to be a dispute about that Those incidents constitute severe physical abuse How do we review that finding you review it just exactly like you're doing with regard to habitual residents It's a clear air standard of review and I would refer the court to the Hernandez versus Cardozo case Which is cited in the materials, which exactly held that point out of the Seventh Circuit in 2016 that's that that's the standard that we believe would be applied just as much as Let me ask you mr. Everett, sir Since the You know Supreme Court had no occasion to address it in Monaskey You referred to the Seventh Circuit case Is there a Ninth Circuit case on the standard of review on the ultimate finding of you know of? abuse I Don't recall that there was one and that's why we cited the Seventh Circuit for our for our version of the standard of review I don't see any reason why there would be a different standard of review for great risk as habitual residents since the fact finder has To make a specific detailed analysis of the facts in the case So one would assume that is that and I certainly don't know of any case law that says it's a de novo review or anything that says it's a Abusive discretion review that one would use for the great risk analysis On Pages 50 and 51 of the Answering brief is where I set forth the standard of review. That's to be done for great risk I did cite that the case of enraged B del CS 559 F 3rd 999 9th Circuit 2009 Also said it's a stain. It's the same for grave risk as it is for habitual residents As well as the Hernandez case which we just discussed Does that answer your question your honor or do I need to elaborate? Yes. No, that's fine. Thank you. Okay So with regard to the the factors in this particular case And I'm not sure it sounds like the court may be lean to not getting to the grave risk but I do want to mention that the young ages of the children the type and the manner of Punishment in this case sometimes even bathroom accidents the punishment was solely directed to the children The children were not simply in the zone of danger like we see in so many cases And they just didn't witness their mother getting hurt They were the actual victims of the abuse the punishment was immediate the punishment was administered behind a locked door Not a closed door not a shut door, but a locked door The children's clothing were removed the children's genitals were exposed now I'm not suggesting there's a sexual overtone and neither did judge Lanza, but it does demonstrate the control Dominion and the humiliation that would be exhibited against the children at this time I the punishment was administered not only to the buttocks but to the upper and lower thighs and to the back The swats occurred with an instrument or a weapon it was a PVC pipe a wooden dowel or a long plastic ruler The swats occurred multiple times depending upon the sin quotes that was committed by the children and if the child Identified the wrong sin they got squatted twice Swats occurred multiple times per day and multiple times per week Evidence showed as many as 20 to 50 times per week in some instances even mr. Farr's own son testified to that the beatings left marks on the children which were identified in photographs and tested to testify to by multiple Witnesses including mr. Farr's only and only immediate father brother and sister in this case and the child picked his or her weapon for those reasons We're asking the court to affirm the trial court in this matter. Thank you very much Thank You. Mr. Everett. So mr. Farr Does anybody have any other questions for mr. Everett's before we go back to mr. Farr? I have no questions No Okay, mr. Farr. You've got some time on the clock. You may proceed. Thank you very much your honors I'd like to just address a couple of points that mr. Everett's made in regards to Colorado. I first traveled to Colorado in 2019 and the purpose of my travel there was to file the petition and Also to follow the police report and that happened well after the the abduction had taken place your honors So I don't really see how that's a factor and one of the important things that mr Everett's didn't mention or that judge Lanza didn't mention in his order when it came to the children We see all these details about how this was their permanent residence or they didn't agree on this or or they didn't know where they Wanted to live but were the children actually looked at judge lines have made the decision that they were just babies But they were actually three and a half years old when they left Mexico and that their brother their older brother is still here in Mexico, it's not like the mother took all of the kids with them They're separated from their family from their their social environment And even though they weren't in school at the time, they still were connected with church They were connected with other friends in the area with their nannies with they had their whole social Environment was here in Mexico when they left the United States. They were six months old They probably had zero recollection of the United States at the time They they left me they left Mexico back to the u.s. All of their lifelong experiences had been in Mexico Another thing that I'd like to address your honor is is This whole this whole grave risk your honor. You know, I and I'd like to share with the court that process Mr. Everett's trying to make me look like I'm some crazy person and that's not the case I choose to discipline my children and I spanked them in a loving way I use a reconciliation process that that a family member taught me about about eight years ago And I've been spanking my youngest son. Km kfc was since he was three years old 2012 and and so there's this conflict in our family where the family doesn't like the spanking even though we were spanked as a kids as Kids and my parents did it in a way where when they were they were angry and frustrated I spanked my kids in a very loving methodical way where they know the exact amount of discipline that they're gonna get For whatever it is They gave the infraction they've committed and I do it as a way to help teach them to learn to be better people and I Do it in a loving way with reconciliation with them not an angry frustrated way I did admit your honor that I did lead one or two times a mark on my youngest daughter And I felt horrible about that and that's why I switched to using the soft plastic ruler in favor of the dowel rod And that was just something that happened because I had spanked her on the back of her leg and she had some really chubby thighs and that happened and My family has tried to use that to to punish me and to hurt me and by keeping my kids away from me in Retaliation because I grew up in a you know Broken dysfunctional home and because I've made the decision to change my life and to have a better life for myself and for my kids My family can't accept that and there was they were biased in in in the evidentiary hearing and they admitted their biases on the record Yet it judge Lanza took what they said at face value And I think when your honors when you deconstruct that you're gonna see they just all had a problem with me spanking If there was violence going on then why didn't somebody report this years ago? Why did somebody say something? Why was it only when it was time to leave Mexico? They all of a sudden they're filing accusations against me Why did my father who I was estranged from turn and start helping miss Kendrick? I Think that these are all things that the court is all in the record in the details and the evidence And I don't think the judge Lanza looked at that. I think that he missed that your honors I think that for him he saw a pro se guy coming in his whole family's against him He's got no money in this situation and and he'd already made a decision in his mind and when I walked in there with a hundred and something exhibits for him to look at I think that he just Are you you've you've exceeded your time I think we I think we all understand your argument. We thank mr. Far and mr. Everett's for their arguments This case will be submitted And unless either my colleagues wishes to take a break I don't see either either of them. So suggesting we'll move on to the next case on the calendar Okay
judges: Tashima, Hurwitz, Marshall